UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIELLE TEUSCHER, individually and in her capacity as mother and natural guardian of Z.F., a minor,<br><br>                    Plaintiffs,<br><br>    v.<br><br>CCB-NWB, LLC, a California limited liability company, d/b/a, NW CRYOBANK,<br><br>                    Defendant. | NO: 2:19-CV-0204-TOR<br><br>ORDER APPOINTING GUARDIAN AD LITEM; GRANTING DEFENDANT'S MOTION TO DISMISS |

BEFORE THE COURT is Plaintiff Danielle Teuscher's Motion to Appoint Guardian Ad Litem (ECF No. 40) and Defendant CCB-NWB, LLC's Motion to Dismiss (ECF No. 45). A telephonic hearing was held on January 30, 2020. The Court has reviewed the record and files therein, considered the argument of counsel and is fully informed.

//

ORDER APPOINTING GUARDIAN AD LITEM; GRANTING DEFENDANT'S MOTION TO DISMISS ~ 1

# GUARDIAN AD LITEM

Because Danielle Teuscher is represented by counsel and because there is no apparent conflict between Danielle Teuscher and minor Z.F., the Court exercises its discretion under LCivR 17(c)(3) and RCW 4.08.050, and grants the Motion to Appoint Guardian Ad Litem (ECF No. 40). Should a conflict of interest develop, counsel for Plaintiffs shall immediately advise the Court and the issue will be revisited.

For the reasons discussed below, the Court also grants the Defendant's Motion to Dismiss (ECF No. 45).

# BACKGROUND

In short, Plaintiff Danielle Teuscher purchased donated gametes from Defendant CCB-NWB, LLC. After a successful pregnancy using the gametes, Ms. Teuscher had Plaintiff Z.F. Ms. Teuscher subsequently purchased additional vials of gametes from the same donor with the hopes of having more children. However, Ms. Teuscher sought genetic ancestry information of Z. F. and her genetic relatives and thereafter contacted the donor's mother. Defendant then sent a cease and desist letter to Ms. Teuscher claiming this constituted a breach of the underlying agreement to respect the donor's anonymity, to refrain from seeking information concerning the identity or background of the donor, and to refrain from contacting the donor directly or indirectly. *See* ECF Nos. 41-1 at 4; 41-3 at 2.

In the letter, Defendant notified Ms. Teuscher that Defendant is withholding the remaining, purchased gametes and that Defendant is entitled to $20,000 in liquidated damages for violating the agreement twice. Plaintiff subsequently filed this suit seeking damages and access to the gametes.

The Court previously dismissed Plaintiffs Danielle Teuscher and Z.F.'s First Amended Complaint with leave to amend. ECF No. 39 (dismissal without prejudice). The Court determined Plaintiffs' claim under the Washington Consumer Protection Act and claim for Intentional Infliction of Emotional Distress (IIED) were not yet viable. *Id*. The Court further determined that the amount in controversy requirement for diversity jurisdiction had not been established. Plaintiffs submitted a Second Amended Complaint with substantially the same factual allegations and additional claims for damages. ECF No. 41.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be granted." "The burden of demonstrating that no claim has been stated is upon the movant." *Glanville v. McDonnell Douglas Corp.*, 845 F.2d 1029 (9th Cir. 1988). A motion to dismiss for failure to state a claim will be denied if the plaintiff alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

While the plaintiff's "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff[,]" the plaintiff cannot rely on "conclusory allegations of law and unwarranted inferences [] to defeat a motion to dismiss for failure to state a claim." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation and brackets omitted). That is, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements". *Twombly*, 550 U.S. at 555. When deciding, the Court may consider the plaintiff's allegations and any "materials incorporated into the complaint by reference . . . ." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citing *Tellabs*, 551 U.S. at 322).

## DISCUSSION

Defendant moves the Court to dismiss Ms. Teuscher's[1] claim for Intentional Infliction of Emotional Distress ("IIED"), ECF No. 41 at 63-67, ¶¶ 171-181, claim under the Washington Consumer Protection Act, ECF No. 41 at 38-46, ¶¶ 119-134, and request for declaratory judgment that the terms of the agreement are

---

[1] Defendant did not request dismissal against Z.F. because Z.F. did not have a guardian ad litem appointed at the time of the motion. ECF No. 45 at 2, n.1.

ORDER APPOINTING GUARDIAN AD LITEM; GRANTING DEFENDANT'S MOTION TO DISMISS ~ 4

unconscionable, among other requests, ECF No. 41 at 50-52, ¶¶ 148-155.  ECF No. 45 at 3.  The Court will address each claim in turn.

### A. Intentional Infliction of Emotional Distress

The Court previously determined Ms. Teuscher's claim for intentional infliction of emotional distress was not viable, specifically stating: "Plaintiffs' claim for intentional infliction of emotional distress does not rise to the level of conduct 'utterly intolerable' by a civilized society." ECF No. 39 at 4 (quoting *Grimsby v. Samson*, 85 Wash. 2d 52, 59 (1975)).  The complained-of conduct has not changed under the Second Amended Complaint, although Plaintiff provides new, albeit distinguishable, case law.  The Court finds once again that Ms. Teuscher's allegations do not state a claim for IIED.

As for the complained-of conduct, Ms. Teuscher points to Defendant sending the cease and desist letter, withholding the gametes, and "prevent[ing] the exchange of crucial health and other information . . . ." ECF No. 47 at 8-9.  With respect to the health information, it is undisputed that Defendant is providing the required medical information from the donor—there is no basis for Plaintiff's claim of entitlement to the sibling registry, and the withdrawal of access thereto would not support a claim for IIED, in any event.  Further, simply sending a cease and desist letter in accordance with contractual rights – even if mistaken – does not support a claim for IIED.  While the withholding of the gametes is more of a close

ORDER APPOINTING GUARDIAN AD LITEM; GRANTING DEFENDANT'S MOTION TO DISMISS ~ 5

call, the Court finds this, too, does not establish conduct beyond that which is tolerable in a civilized society in the specific context presented to the Court.

As for the withholding of the gametes, it is important to note that there appears to be no reason to treat the gametes at issue as anything but personal property. Ms. Teuscher cites to case law where the destruction of a fertilized egg supported a claim for IIED, but the interests at stake are markedly different in that context—a fertilized egg implicates life and all the attending emotions attached thereto, whereas gametes only present the potential for life. *See* ECF No. 47 at 11-12 (citing *Del Zio v. Presbyterian Hospital in New York*, 1978 U.S. Dist. LEXIS 14450 (S.D.N.Y. 1978)).

Ms. Teuscher also cites to *Witt v. Yale-New Haven Hospital*, 977 A.2d 779 (Conn. Super. 2008), where the court determined the destruction of gametes could support a claim for IIED. ECF No. 47 at 12. However, in that case, the defendant intentionally destroyed plaintiff's *own* gametes which the defendant promised to store knowing plaintiff was undergoing a procedure that was likely to result in sterilization—taking away the only potential for the plaintiff to produce offspring with her own genetics. *Id.* at 782, 785, 788. While intentionally destroying a fertilized egg or destroying the only hope in having genetic offspring may be conduct not tolerable to a civil society, simply withholding sperm *where the donor's anonymity has been jeopardized* is not.

ORDER APPOINTING GUARDIAN AD LITEM; GRANTING DEFENDANT'S MOTION TO DISMISS ~ 6

Rather, Defendant's conduct was a relatively natural response to Ms. Teuscher invading the donor's rights and upsetting Defendant's business structure, which indisputably depends on maintaining donor anonymity. Notably, under contract law, if a party commits a material breach then the other party is relieved from performance:

> A "material breach" is a breach that is serious enough to justify the other party in abandoning the contract. A "material breach" is one that substantially defeats the purpose of the contract, or relates to an essential element of the contract, and deprives the injured party of a benefit that he or she reasonably expected.

Material Breach—Definition, 6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 302.03 (7th ed.); *see Jacks v. Blazer*, 39 Wash. 2d 277, 285 (1951) ("A breach or non-performance of a promise by one party to a bilateral contract, so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty"). While Defendant may not ultimately have the right to withhold the property, Defendant did nothing more than assert a colorable contractual remedy to not perform (i.e., deliver the gametes) in response to discovering what it perceived was a material breach. Given this context, the Court cannot say the conduct is utterly intolerable in a civilized society.

**B. Washington Consumer Protection Act**

To establish a CPA action, "a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3)

public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986). In support of her CPA claim, Ms. Teuscher asserts that Defendant engaged in deceptive marketing, pointing to Defendant's representation that it would sell "Open ID" donors, hold the gametes for Ms. Teuscher's use, give Ms. Teuscher access to on-line donor medical updates; and maintain and support sibling connections through Defendant's sibling registry. ECF No. 47 at 4-5.

Other than the promise to store and deliver the gametes, however, none of these representations were part of the contract[2] or have any bearing on alleged damages to Ms. Teuscher's business or property[3]. As to the promise to deliver the gametes, Defendant's failure to do so does not amount to a CPA claim because there is no indication Defendant employed any unfair or deceptive act or practice

---

[2] This is significant because the contract at issue clearly states that the customer – here, Ms. Teuscher – is not relying on any representations outside of the agreement. ECF No. 41-1 at 5 ("Client . . . does not rely on any representation of NWCryobank not specifically contained" in the Purchase Agreement).

[3] Ms. Teuscher appears to reference other conduct, *see* ECF No. 47 at 5, but it is not related to any injury to business or property.

ORDER APPOINTING GUARDIAN AD LITEM; GRANTING DEFENDANT'S MOTION TO DISMISS ~ 8

occurring in trade or commerce. As noted above, Defendant did nothing more than assert a colorable – even if misplaced – contractual remedy to not perform upon discovering what it perceived as a material breach.

Moreover, at oral argument, Plaintiffs contended that the public interest element is met because Defendant *could* act the same way to countless others, but this is pure speculation without any evidentiary support.

> [W]here the acts complained of involve "essentially a consumer transaction" such as the sale of goods, the following five factors are relevant: "(1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?"

*Stephens v. Omni Ins. Co.*, 138 Wash. App. 151, 177 (2007) (quoting *Hangman Ridge*, 105 Wash. 2d at 790). There is no evidence Defendant has withheld gametes in the past, that there is a real and substantial potential for repetition, or that the act was part of a pattern or generalized course of conduct. The act only involved a single transaction and no other customers were affected by it. As such, the only factor that could potentially weigh in favor of Ms. Teuscher is the first, but even this factor does not clearly weigh in Ms. Teuscher's favor given the complained-of conduct was a response to a Ms. Teuscher's alleged breach of contract.

ORDER APPOINTING GUARDIAN AD LITEM; GRANTING DEFENDANT'S MOTION TO DISMISS ~ 9

## C. Declaratory Judgment (Unconscionability)

Defendant moves the Court to dismiss Ms. Teuscher's requests for declaratory judgment. Specifically, Plaintiffs request a declaratory judgment that:

(1) the indemnification provision is procedurally unconscionable and therefore unenforceable, ECF No. 41 at 50, ¶ 149;

(2) the liquidated damages clause is a penalty and substantively and procedurally unconscionable, and thus not enforceable, ECF No. 41 at 50-51, ¶¶ 150, 153;

(3) the provision prohibiting customers from seeking the genetic ancestry of the donor and contacting the donor directly or indirectly is "unfair", substantively and procedurally unconscionable, and against public policy, ECF No. 41 at 51-52, ¶¶ 151, 153, 155; and

(4) Defendant is improperly seeking the enforcement of the liquidated damages provision, ECF No. 41 at 51, ¶ 152.[4]

---

[4] Plaintiffs assert that "Paragraph VIII of the Customer Agreement should be stricken", but the specific references to said paragraph are more narrowly tailored to particular provisions within Paragraph VIII. Further, Plaintiffs assert that "[a]ny other agreements which Defendant are now using to substitute for the liquidated damages clause of Paragraph VIII are likewise unconscionable as against public

The Court will address the issues in turn.

**1. Unconscionability; Penalty**

Although "[i]t is black letter law of contracts that the parties to a contract shall be bound by its terms[,]" Washington law provides an exception for an "unconscionable bargain". *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wash. 2d 293, 302-303 (2004) (citation omitted). "The existence of an unconscionable bargain is a question of law for the courts." *Id.* at 303. Washington has "recognized two categories of unconscionability, substantive and procedural." *Id.* at 303.

    a. <u>Procedural unconscionability</u>

Procedural unconscionability is "the lack of meaningful choice, considering all the circumstances surrounding the transaction", including "the manner in which the contract was entered," whether each party had "a reasonable opportunity to understand the terms of the contract," and whether "the important terms were hidden in a maze of fine print." *Id.* (brackets omitted). "[T]he key inquiry for finding procedural unconscionability is whether [the party] lacked meaningful choice. *Id.* Washington courts "have cautioned that these three factors should not be applied mechanically without regard to whether in truth a meaningful choice

---

policy . . . ." ECF No. 41 at 52, ¶ 154. This assertion as to future contracts lacks the necessary particularity, ripeness and standing to state a claim for relief.

ORDER APPOINTING GUARDIAN AD LITEM; GRANTING DEFENDANT'S MOTION TO DISMISS ~ 11

existed." *Id.* (brackets and internal citations omitted). The fact that the contract is one of adhesion and the parties have unequal bargaining power does not, standing alone, justify a finding of procedural unconscionability. *See id.* at 305. Even if there is a lack of bargaining power, "[t]his will not suffice" where the complaining party has adequate time to review the terms and contact an attorney, and where the important terms are not hidden in a "maze of fine print". *Id.* at 306-07.

Here, while Ms. Teuscher may not have had the bargaining power to negotiate different terms, she had ample opportunity to review the terms (there was no mandated timeframe)[5], and the terms were clearly disclosed in a relatively simple, short and clear agreement. Further, she did not have to engage in the services, and could have sought the services elsewhere. She had a meaningful choice in the matter, and she chose to enter into the agreement willingly, without any pressure to do so. While Plaintiffs' alleged in the First Amended Complaint that "[a]t no time prior to signing the Customer Agreement did Ms. Teuscher have the opportunity to consult with counsel of her choice", ECF No. 23 at 15, ¶ 49, this

---

[5] *See Zuver*, 153 Wash. 2d at 306 (citing *Luna v. Household Fin. Corp. III*, 236 F.Supp.2d at 1176 (W.D. Wash. 2002) (three-day rescission period provided parties with a reasonable opportunity to consider the terms of the agreement)).

ORDER APPOINTING GUARDIAN AD LITEM; GRANTING DEFENDANT'S MOTION TO DISMISS ~ 12

assertion was conspicuously omitted from the Second Amended Complaint and replaced with the statement that she did not consult with an attorney, ECF No. 41 at 18, ¶ 55. This statement does not mean she did not have ample time to consider the terms or seek counsel had she chosen to do so. The Court notes that there was no fixed timeframe in which she had to agree to the terms. As such, the Court finds Ms. Teuscher's procedural unconscionability argument fails as a matter of law.

      b. <u>Substantive unconscionability</u>

"Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh." *Zuver*, 153 Wash. 2d at 303. "[T]erms sometimes used to define substantive unconscionability" include "[s]hocking to the conscience", "monstrously harsh", and "exceedingly calloused". *Id.*

      i. *Liquidated damages*

In Washington, liquidated damages provisions are upheld when the amount specified "is a reasonable forecast of the compensation necessary to make the [non-breaching party] whole[.]" *Wallace Real Estate Inv., Inc. v. Groves*, 124 Wash. 2d 881, 894 (1994).

The Court finds that the liquidated damages provision is reasonable in light of the fact that the underlying harm to Defendant and the donor concerns an

immeasurable and significant harm to both (1) Defendant's business model in guaranteeing donor anonymity and (2) the donor's interest in remaining anonymous. While the donor's interest is less material to this analysis given the donor is a third party, the significance of the interest directly bears on the Defendant's interest in maintaining the donor's anonymity.

The Court notes that the concept of privacy and the value attending such varies with context. Here, the privacy interests are at a zenith where the parties are dealing with the creation of life, Defendant's business model hinges on maintaining donor anonymity, and the donor is just that—a donor. While Washington does not require the amount of damages to be difficult to calculate, the fact that the interest at stake is so abstract lends to the reasonableness of the amount. Plaintiff asserts Defendant has suffered no damages, ECF No. 46 at 15, but that is not so clear where the entire business model relies on protecting anonymity and failing to protect such could cause immeasurable damages to Defendant. Plaintiff also asserts the estimation is inconsistent with the provisions limiting recovery of damage *for Plaintiff* to $100, ECF No. 47 at 17, but this has no bearing on whether the liquidated damages *for Defendant* is a reasonable estimation of its losses. *See* ECF No. 41-1 at 4.

The Court finds instructive the liquidated damages provisions in the Video Privacy Protection Act ("VPPA") and the Driver's Privacy Protection Act

ORDER APPOINTING GUARDIAN AD LITEM; GRANTING DEFENDANT'S MOTION TO DISMISS ~ 14

("DPPA"). Under the VPPA, Congress has provided for liquidated damages in the amount of $2,500 when a "video tape service provider [] knowingly discloses, to any person, personally identifiable information concerning" a "renter, purchaser, or subscriber". 18 U.S.C. § 2710(a)(1)), (b)(1), (c)(2)(A). Similarly, under the DPPA, "the individual to whom the information pertains" may recover liquidated damages in the amount of $2,500 against any "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted" under the DPPA. 18 U.S.C. § 2724(a), (b)(1).

The privacy interests at stake here are markedly more significant than that at stake under the VPPA and DPPA. And while the privacy interests are only indirectly related to the harm, this highlights the importance of protecting donor anonymity and the attending harm it could cause Defendant as a business should they fail to protect such. Thus, the $10,000 liquidated damages provisions is reasonable and is not a penalty or unenforceable as a matter of public policy. *See Underwood v. Sterner*, 63 Wash. 2d 360, 366 (1963) ($25,000 in liquidated damages was not unreasonable); *Ashley v. Lance*, 80 Wash. 2d 274, 280 (1972) ($10,000 upon violation of a non-compete provision in a partnership agreement was not a penalty).

          ii.    *Donor's background information; prohibited contact*

The promise to honor the donor's privacy interests is clearly reasonable

given the context, as are the specific restrictions on seeking background information and directly or indirectly contacting the donor. Although the Customer Agreement limits Ms. Teuscher's ability to seek information about the donor's background or contact the donor directly or indirectly, Defendant agreed to provide relevant medical information from the donor—representing a reasonable balance of the interests at issue.

Importantly, Plaintiff could still perform DNA testing to discover genetically relevant medical information without seeking information on genetic *ancestry* or other information that would destroy the donor's anonymity. It is the procurement of ancestry information, not genetic medical testing, that gave rise to the breach of contract claim.

Further, restricting contact is entirely reasonable. Notably, the agreement specifically provides an avenue in which the customer can (1) contact the donor through Defendant acting as third party if approved by the donor and (2) contact Defendant "directly with inquiries concerning or relating to the Donor." ECF No. 31-1 at 4. Moreover, it does not matter that the predicted grandmother opted in to be contacted in the independent third-party ancestry service—Ms. Teuscher affirmatively agreed not to contact the donor directly or indirectly and agreed to respect the donor's privacy, and her communications to the predicted grandmother implicates a breach of that agreement.

ORDER APPOINTING GUARDIAN AD LITEM; GRANTING DEFENDANT'S MOTION TO DISMISS ~ 16

### 2. Public Policy

"As a matter of law, 'contract terms are unenforceable on grounds of public policy when the interest in its enforcement is clearly outweighed by a public policy against the enforcement of such terms.'" *LK Operating, LLC v. Collection Grp., LLC*, 181 Wash. 2d 48, 85 (2014) (internal brackets omitted) (quoting *State v. Noah*, 103 Wash. App. 29, 50 (2000) (citing Restatement (Second) of Contracts § 178 (1981))). "In general, a contract which is not prohibited by statute, condemned by judicial decision, or contrary to the public morals contravenes no principle of public policy." *Id.* (internal quotation marks omitted) (quoting *State Farm Gen. Ins. Co. v. Emerson*, 102 Wash. 2d 477, 481 (1984) (quoting 17 C.J.S. Contracts § 211 (1963))). "The underlying inquiry when determining whether a contract violates public policy is whether the contract 'has a tendency to be against the public good, or to be injurious to the public.'" *Id.* at 86 (internal quotation marks omitted) (quoting *Scott v. Cingular Wireless*, 160 Wash. 2d 843, 851 (2007)). Stated directly, "[t]he underlying inquiry in determining whether a contract is unenforceable because it violates public policy is whether the contract itself is injurious to the public." *Id.* at 87.

Plaintiff asserts that "Paragraph VIII of the Customer Agreement should be stricken because [it is against] the public policy of knowing your genetic ancestry for a mother to better protect her child's physical and psychological health from

ORDER APPOINTING GUARDIAN AD LITEM; GRANTING DEFENDANT'S MOTION TO DISMISS ~ 17

future disease . . . ."

For the reasons discussed above, the provision is not against public policy. Namely, (1) the provision does not prohibit seeking relevant *medical* information – as opposed to *ancestral* information and (2) the provision represents a reasonable balance between protecting the donor and Defendant's interest in maintaining the donor's anonymity and the customer's interest in receiving relevant medical information. Indeed, Washington recently passed legislation recognizing the donor's right to remain anonymous and specifically contemplated the framework present here where Defendant provides relevant medical information to the customer. RCW 26.26A.800 (defining medical history), 815 (recognizing right of donor to remain anonymous), 820 (requiring gamete bank or fertility clinic to make a good faith effort to provide access to nonidentifying medical history of the donor, upon request).

### 3. "**Unfairness**"

Finally, Ms. Teuscher asserts the restriction on seeking genetic ancestry information is "unfair in light [of] the internet and websites such as 23andMe which connect consenting adults who opt-in to their agreement so that they can communicate with genetic relatives." ECF No. 41 at 52, ¶ 155. However, the fact that an industry provides avenues for Ms. Teuscher to breach her agreement through DNA testing and contacting genetic relatives does not make the terms of

her agreement "unfair". Indeed, it makes the provisions all the more important.

**ACCORDINGLY, IT IS HEREBY ORDERED**:

1. Plaintiff Danielle Teuscher's Motion to Appoint Guardian Ad Litem (ECF No. 40) is **GRANTED**. Should a conflict of interest develop, counsel for Plaintiff's shall immediately advise the Court and the issue will be revisited.

2. Defendant CCB-NWB, LLC's Motion to Dismiss (ECF No. 45) is **GRANTED**. Plaintiff's claim for Intentional Infliction of Emotional Distress, claim under the Washington Consumer Protection Act, and requests for declaratory judgment are **dismissed with prejudice**.

The District Court Executive is hereby directed to enter this Order and furnish copies to counsel.

DATED January 31, 2020.



THOMAS O. RICE
Chief United States District Judge

ORDER APPOINTING GUARDIAN AD LITEM; GRANTING DEFENDANT'S MOTION TO DISMISS ~ 19